**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>TREVOR BROWN,<br>        Defendant. | Criminal Action No. 22-170 (CKK) |

**MEMORANDUM OPINION**
(July 20, 2022)

For his actions as a member of the riot at the United States Capitol on January 6, 2021, Defendant Trevor Brown is charged by indictment with one felony and three misdemeanor counts. Although represented by counsel, Defendant has moved *pro se* to dismiss the indictment, raising a host of meritless arguments broadly connected to the "sovereign citizen" movement. Accordingly, after giving Defendant's arguments full consideration, and upon consideration of the briefing,[1] the relevant legal authorities, and the entire record, the Court **DENIES** Defendant's [34] "Motion to Dismiss, Lack of Jurisdiction, Declaratory Judgment, Tort Settlement."

---

[1] The Court's consideration has focused on:
- Defendant's *pro se* "Motion to Dismiss, Lack of Jurisdiction, Declaratory Judgment, Tort Settlement, ECF No. 34 ("Motion" or "Mot.");
- United States' Opposition to Defendant Trevor Brown's Motion to Dismiss, ECF No. 39 ("Opp.");
- Defendant's Reply Brief in re Mr. Brown's *Pro Se* Motion to Dismiss, ECF No. 40 ("Repl.") (filed by counsel);
- The Government's Statement of Facts in support of its Criminal Complaint, ECF No. 1-1 ("Compl."); and
- The Indictment, ECF No. 30 ("Indictment").

In an exercise of its discretion, the Court has concluded that oral argument would not be helpful in the resolution of the Motion.

# I. BACKGROUND

Defendant is charged by indictment with: (1) Civil Disorder and Aiding and Abetting, in violation of 18 U.S.C. § 231(a)(3) and 2; (2) Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1); (3) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation 18 U.S.C. § 1752(a)(2); and (4) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D).

**A. Certification of the 2020 Presidential Election and Capitol Riot**

The Twelfth Amendment of the United States Constitution provides that, after the members of the Electoral College "meet in their respective states and vote by ballot for President and Vice-President," they "shall sign and certify [their votes], and transmit [them] sealed to the seat of government of the United States, directed to the President of the Senate." U.S. Const. amend. XII. The Vice President of the United States, as President of the Senate, must then, "in the presence of the Senate and House of Representatives, open all the certificates[,], and the votes shall then be counted." To count the votes and "declar[e] the result" of the Electoral College, federal law mandates that "Congress shall be in session on the sixth day of January succeeding every meeting of the electors" and that "[t]he Senate and House of Representatives shall meet in the Hall of the House at the hour of 1 o'clock in the afternoon on that day." 3 U.S.C. §§ 15-16.

Pursuant to the Constitution and federal law, Congress convened in a joint session on 1:00 PM on January 6, 2021, to count the votes of the Electoral College and certify the results of the 2020 Presidential Election, which had taken place on November 3, 2020. *See* Compl., Stmt. of Facts ("SOF") at 1, ECF No. 1-1. With then-Vice President Michael R. Pence presiding, proceedings began and continued until 1:30 PM, when the United States House of Representatives and the United States Senate adjourned to separate chambers within the Capitol to debate and

consider an objection to the Electoral College vote from the State of Arizona. *Id.* Vice President Pence continued to preside in the Senate chamber. *Id.*

Shortly before noon, then-President Donald J. Trump took the stage at a rally of his supporters staged just south of the White House. *Trump v. Thompson*, 20 F.4th 10, 17 (D.C. Cir. 2021). Then-President Trump declared that the election was "rigged" and "stolen," and urged the crowd to "demand that Congress do the right thing and only count the electors who have been lawfully slated." *Id.* at 18 (cleaned up). During and after then-President Trump's speech, a mass of attendees marched on the Capitol. *See id.*

As they gathered outside the Capitol, the crowd faced temporary and permanent barricades and Capitol Police positioned to prevent unauthorized entry to the Capitol. Aff. at ¶ 6. Shortly after 2:00 p.m., "crowd members forced entry into the Capitol building, including by breaking windows and assaulting Capitol Police officers, while others in the crowd encouraged and assisted those acts." *Id*. These violent acts caused members of the Senate and House of Representatives to evacuate the chambers of the Capitol and suspend the certification process of the presidential election results. *Id*. at ¶ 7. The violent riot "desecrated [the Capitol], blood was shed, and several individuals lost their lives." *Thompson*, 20 F.4th at 19. All told, "[t]he events of January 6, 2021 marked the most significant assault on the Capitol since the War of 1812." *Id*. at 18-19 (footnote omitted).

### B. Events Specific to Defendant

Defendant is one of more than 700 individuals charged with federal crimes for his conduct on January 6th. According to the allegations in the the Affidavit in Support of Criminal Complaint, ECF No. 1-1,[2] Defendant traveled from Novi, Michigan to Washington, DC on or

---

[2] "It is appropriate if not necessary to rely on other official documents for the specific factual allegations underlying the [] Indictment, as the indictment itself contains few, if any, details

about January 6, 2021 to protest the results of the 2020 Presidential election. A variety of photos and videos depict Defendant at the front of the riot battling police lines on the Lower West Terrace of the Capitol building. Aff. at 2-4. These photos and videos show Defendant assisting fellow rioters in disarming officers of the Metropolitan Police Department ("MPD") as the officers beat back insurrectionists attempting to breach the Lower West Terrace Tunnel. *Id.* at 13. As law enforcement has testified before Congress, the "hand-to-hand combat" in the Tunnel "was nothing short of brutal." The House Select Committee to Investigate the January 6th Attack on the United States Capitol: "The Law Enforcement Experience on January 6th," – Cong. – (July 27, 2021) (Testimony of Officer Michael Fanone) at 4 (available at https://docs.house.gov/meetings/IJ/IJ00/20210727/113969/HHRG-117-IJ00-Wstate-FanoneO-20210727.pdf). Defendant was among the few rioters who, after pushing to the front of the mob, succeeded in breaking through the police line in the Tunnel. Aff. at 13. Law enforcement arrested Defendant who, during booking, "confirmed his identity as Trevor Brown from Novi, Michigan." *Id.* After his release from police custody, Defendant gleefully told his Facebook follows that he "almost died" "storming the Capitol" "but [he] made it." *Id.* at 5.

### C. Procedural History

On June 25, 2021, the Government filed its criminal complaint. Defendant first appeared before Magistrate Judge G. Michael Harvey on July 14, 2021; the Government did not file the Indictment until May 18, 2022. Defendant has pleaded "not guilty" to the charges in the Indictment. Although Defendant was first released on personal recognizance, the Court revoked his pretrial release on June 27, 2022 and remanded him to the custody of the United States

---

about [Defendant's] alleged conduct." *United States v. McHugh*, --- F Supp. 3d ---, 2022 WL 296304 at *2 n.2 (D.D.C. Feb. 1, 2022) (JDB); *Untied States v. Grider*, --- F. Supp. 3d ---, 2022 WL 392307, at *2 n.2 (D.D.C. Feb. 9, 2022).

Marshals Service based on violations of his release conditions. Order, ECF No. 38 (sealed). The Court also set a more expedited briefing schedule for Defendant's Motion. With the Motion now fully briefed, the Court turns to its resolution.

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 12(b)(2), a criminal defendant may, at any time, move to dismiss an indictment for lack of jurisdiction   When considering a challenge to the indictment, "a district court is limited to reviewing the face of the indictment;" the Court must "presume the allegations [in the] indictment to be true." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (internal quotation marks removed). Nevertheless, the burden is on the Government to establish jurisdiction by a preponderance of the evidence. *United States v. Carvajal*, 924 F. Supp. 2d 219, 230 (D.D.C. 2013).

## III.     DISCUSSION

Defendant's Motion is difficult to follow at times, but the crux of the argument appears to rest on "sovereign citizen" ideology. Although not frequently seen in this jurisdiction, this ideology has been roundly rejected by scores of federal courts. *Reed v. Cushwa*, 2021 WL 2894736, at *2 (D.D.C. June 29, 2021) (CRC); *see also United States v. Nissen*, 555 F. Supp. 3d 1173, 1202 (D.N.M. 2021) (collecting cases). Sovereign citizen challenges to criminal actions generally center on a confused distinction between a "living" person and a "corporate" or "artificial" person, premised on the mistaken belief that the Fourteenth Amendment creates the latter class of citizenship and releases the former from the jurisdiction of the federal government and the governments of the several States. *See Nissen*, 55 F. Supp. 3d at 1202; Caesar Kalinowski IV, *A Legal Response to the Sovereign Citizen Movement*, 80 Mont. L. Rev. 153, 157-60 (2019). Defendant advances the same sort of theory, characterizing himself as a "live

flesh and blood American" and insisting that the Indictment "misidentifie[s] [him] as Trevor Brown." *Compare* Mot. at 26, 34 *with, e.g.*, *United States v. Benabe*, 654 F.3d 753, 764 (7th Cir. 2011) (as here, sovereign citizen "demanded 'documented evidence' that the court had jurisdiction over him as a 'born sovereign, flesh-and-blood human being'"). At least one federal Court of Appeals has directed the district courts within its Circuit to "reject[] summarily [these arguments], however they are presented." *Benabe*, 654 F.3d at 767. Although the Court would be inclined to join the Seventh Circuit in this regard, it shall exercise its discretion to review each of Defendant's arguments in more detail.

### A. Misidentification

Defendant, Trevor Brown, first argues that the Indictment "misidentifies" him as "TREVOR BROWN" and that he was never provided an identity hearing. Mot. at 12. To the extent Defendant argues that he is not, in fact, the Trevor Brown who allegedly committed the crimes charged in the Indictment, a mistaken identity defense is raised at trial and is not a jurisdictional ground to dismiss an indictment. *See United States v. Telfaire*, 469 F.2d 552, 556 (D.C. Cir. 1972). Pursuant to Federal Rule of Criminal Procedure 5, the magistrate judge overseeing a defendant's initial appearance must "transfer the defendant to the district where the offense was allegedly committed" if, among other things, "the judge finds that the defendant is the same person named in the indictment, information, and warrant." *Id.* (c)(3)(D). Here, Magistrate Judge Curtis Ivy, Jr. did just that during Defendant's initial appearance in the United States District Court for the Eastern District of Michigan, and Defendant, with the assistance of counsel, waived his right to a more detailed identity hearing. *See United States v. Brown*, 2:21-mj-30325 (E.D. Mich. July 1, 2021) (minute entry). Having waived his right to an identity hearing, and given the speciousness of Defendant's *pro se* argument, the Court will not belatedly

6

order such a hearing now.

### B. Jurisdiction

Next, Defendant argues that the Court lacks jurisdiction because the Constitution has not empowered Congress to enact the statutes he has been accused of violating. Mot. at 28. As noted above, the Indictment charges Defendant with violating provisions of Titles 18 and 40 of the United States Code. Per the United States Court of Appeals for the District of Columbia Circuit's instructions, "'if an indictment or information alleges the violation of a crime set out in Title 18 or in one of the other statutes defining federal crimes, that is the end of the jurisdictional inquiry.'" *United States v. Fahnbulleh*, 752 F.3d 470, 476 (2014) (cleaned up) (quoting *United States v. George*, 676 F.3d 249, 259 (1st Cir. 2012)). "No more is necessary to establish subject matter jurisdiction." *Id.*

As for Defendant's sovereign-citizen argument that the Court lacks personal jurisdiction over him, such a claim has been widely rejected by a number of federal courts. *See United States v. Underwood*, 726 F. App'x 945, 948 (4th Cir. 2018). Because "there can be no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts," the mere fact that the defendant was within the territory of the United States at the time of the alleged criminal action is "'the beginning and the end of the jurisdictional inquiry.'" *Id.* (internal quotation marks removed) (quoting *Huigi v. United States*, 164 F.3d 378, 380 (7th Cir. 1999)). .

Defendant also insists that that "Title 18 [of the] United States Code is not properly enrolled as an official act of Congress." Mot. at 18. The argument that Title 18 "is unconstitutional [or invalid] because of supposed irregularities in its enactment" is "unbelievably frivolous" and has also been rejected by scores of federal courts. *United States v. Collins*, 510 F.3d 697, 398 (7th Cir. 2007); *see also Cardenas-Celestino v. United States*, 552 F. Supp. 2d

962, 966 (W.D. Mo. 2008) (collecting cases). Altogether, Defendant's jurisdictional objection fails.

### C. Tort Claim

Finally, Defendant attempts to tack on torts claim for "false arrest," "false imprisonment," and "restraint of full unimpaired liberty." Mot. at 31-34. It is unclear against whom Defendant tries to state these claims, but Defendant must bring such claims in an independent action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346 et seq., or *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Even had Defendant properly instituted an action under the FTCA, the Court would lack jurisdiction over such claims because Defendant has yet to exhaust them before the appropriate federal agency. *See Simkins v. District of Columbia*, 108 F.3d 366, 371 (D.C. Cir. 1997). In any event, an attempted civil claim against the federal government is irrelevant for jurisdictional purposes.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's [34] "Motion to Dismiss, Lack of Jurisdiction, Declaratory Judgment, Tort Settlement" is **DENIED**. An appropriate order accompanies this Memorandum Opinion.

Dated: July 20, 2022

　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　　COLLEEN KOLLAR-KOTELLY
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge