**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

UNITED STATES OF AMERICA

v.

TREVOR BROWN,

Defendant.

Criminal Action No. 22-170 (CKK)

---

**MEMORANDUM OPINION & ORDER**
(June 10, 2024)

Defendant Trevor Brown is charged by indictment with one felony and three misdemeanor counts related to his conduct at the United States Capitol on January 6, 2021.  Trial in this case is set to begin on July 29, 2024.  Pending before the Court is Defendant's [97] Motion to Dismiss Count One for Selective Prosecution ("Motion" or "Mot.").  Upon consideration of the briefing,[1] the relevant legal authorities, and the entire record, the Court **DENIES** Defendant's [97] Motion to Dismiss Count One for Selective Prosecution.

## I.      BACKGROUND

The Court refers the reader to its prior opinions for detailed background information on this case.  *See United States v. Brown*, No. 22-170, 2022 WL 2828996, at *1–2 (D.D.C. July 20, 2022); *United States v. Brown*, No. 22-170, 2024 WL 50977, at *1–5 (D.D.C. Jan. 4, 2024).  The Court shall provide a brief summary below.

---

[1] The Court's consideration has focused on:
- The Government's Statement of Facts in support of its Criminal Complaint, ECF No. 1-1 ("Statement of Facts");
- The Indictment, ECF No. 30;
- Defendant's Motion to Dismiss Count One for Selective Prosecution ("Mot."), ECF No. 97;
- The Government's Opposition to Defendant's Motion to Dismiss Count One ("Gov't's Opp'n"), ECF No. 100; and
- Defendant's Brief in Reply to the Government's Opposition to Defendant's Motion to Dismiss Count One for Selective Prosecution ("Def.'s Reply"), ECF No. 101.

On or about January 6, 2021, Defendant traveled from Novi, Michigan to allegedly protest the results of the 2020 Presidential election.  *See* Statement of Facts, ECF No. 1-1, at 2.  Photos and videos depict Defendant at the front of a "crowd of rioters trying to push their way into the Capitol building."  *Id.*; *see id.* at 2–13.  Specifically, Defendant is seen outside the Lower West Terrace of the Capitol building, assisting fellow rioters by "pushing" their way into the tunnel, "shouting into [a] bullhorn," and grabbing a riot shield and holding it up while two rioters step onto the shield.  *Id.* at 7, 10.  Defendant was also among the few rioters who, after pushing to the front of the mob, succeeded in breaking through the police line in the tunnel.  *Id.* at 13.

Numerous social media posts were allegedly published by Defendant following the Capitol riot on January 6th.  For instance, on January 6, 2021, Defendant posted on Facebook, stating: "The world is a stage & Jiu jitsu saved my life many times tonight."  *Id.* at 3.  Another post, published on January 7, 2021, stated, *inter alia*: "People should be storming that Brothel we call the Capitol everyday for what goes on in there. . . .  We should have cleaned that brothel out a long time ago. . . .  It needs to get stormed every time they sell us out to some industry."  *Id.* at 4.  That same day, Defendant also wrote: "We the people need one more solid rally like this and CONgress will be forced to bow and be thrown out for not representing the will of the people and charged with crimes against humanity."  *Id.*  Defendant described his experience in three other social media posts: "Who knew the first time I'd go to DC I'd be storming the Capitol. –and make it in…"; "I made it into the Capitol.  I almost died getting in but I made it."; and "I am the First person to breech the White House in 200 years[.]"  *Id.* at 5.

Subsequently, a grand jury charged Defendant with four offenses: (1) Civil Disorder and Aiding and Abetting, in violation of 18 U.S.C. §§ 231(a)(3) and 2 (Count One); (2) Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count

Two); (3) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); and (4) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Four). *See* Indictment at 1–3. On May 5, 2024, Defendant filed the pending Motion before the Court—a motion to dismiss Count One (the charge under 18 U.S.C. § 231(a)(3)). *See generally* Mot. The Government opposes Defendant's Motion in its entirety. *See generally* Gov't's Opp'n. With the Motion now fully briefed, the Court turns to its resolution.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 12(b)(3), a criminal defendant may, before trial, move to dismiss a count of the indictment based on a "defect in the indictment." Fed. R. Crim. P. 12(b)(3)(B). As relevant here, defects include "failure to state an offense." *Id.* "Failure to state an offense" may be due to a question of statutory interpretation or a constitutional issue. *See United States v. Stone*, 394 F. Supp. 3d 1, 8 (D.D.C. 2019) (ABJ). When considering a challenge to the indictment, "a district court is limited to reviewing the face of the indictment"; the Court must "presume the allegations [in the] indictment to be true." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (RBW) (internal quotation marks omitted); *see also United States v. Mostofsky*, 579 F. Supp. 3d 9, 13 (D.D.C. 2021) (JEB) (court may assume as true the facts set forth "in the Indictment and associated filings"). Courts should only grant a motion to dismiss an indictment in "unusual circumstances." *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015).

## III.    DISCUSSION

Defendant moves to dismiss Count One of the Indictment—Defendant's sole felony charge—alleging that the Government is selectively prosecuting January 6th defendants, including

3

himself.  *See generally* Mot.  The Court addresses this argument below.

### A.  Selective Prosecution

A selective prosecution challenge is an "assertion that the prosecutor has brought [a] charge for reasons forbidden by the Constitution."  *United States v. Armstrong*, 517 U.S. 456, 463 (1996). Although "the Government retains broad discretion as to whom to prosecute," because such charging decisions are generally "ill-suited to judicial review," this kind of challenge nonetheless serves as a check on that "broad, [but] not unfettered" discretion.  *Wayte v. United States*, 470 U.S. 598, 607–08 (1985) (quotation cleaned up); *see also United States v. Fokker Services B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) ("Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought.") (quotation cleaned up and citation omitted).

In raising a selective prosecution challenge, a defendant faces a "demanding" standard. *Armstrong*, 517 U.S. at 463; *see id.* at 468 (stating a selective prosecution claim has a "rigorous standard" for its elements).  A "presumption of regularity applies to prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties."  *Fokker Services B.V.*, 818 F.3d at 741 (internal quotation marks omitted) (quoting *Armstrong*, 517 U.S. at 464).

Typically, a selective prosecution challenge requires the defendant to prove two elements: (1) that the decision to prosecute "had a discriminatory effect"; and (2) that the decision "was motivated by a discriminatory purpose."  *Armstrong*, 517 U.S. at 465.  However, in a civil First Amendment selective enforcement case, the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") recently held that "to make out a First Amendment selective enforcement

claim, [a party] is not required to allege discriminatory intent." *Frederick Douglass Found., Inc. v. Dist. of Columbia*, 82 F.4th 1122, 1145 (D.C. Cir. 2023); *see id.* ("[W]e reject the District's argument that discriminatory motive is required for a First Amendment selective enforcement claim."). The D.C. Circuit then confirmed that demonstrating discriminatory effect—the first element of a selective prosecution challenge—is still required. *See id.* ("Selective enforcement claims are cabined by the requirement that a plaintiff demonstrate he is similarly situated to others against whom the law was not enforced."). Since the D.C. Circuit's opinion in August 2023, only one court in this jurisdiction (to the Court's knowledge) has suggested that the D.C. Circuit's holding in *Frederick* applies in the criminal context. *See United States v. Eshetu*, No. 13-262, 2023 WL 7384996, at *12–14 (D.D.C. Nov. 8, 2023) (CRC) (considering whether defendants' trial counsel was ineffective by failing to investigate and/or present a selective enforcement defense). But the Court sees no reason not to apply the D.C. Circuit's holding in *Frederick*, as the analysis for a selective prosecution challenge and selective enforcement claim is one and the same. *See, e.g.*, *id.* at *12; *Mahoney v. U.S. Capitol Police Bd.*, 566 F. Supp. 3d 1, 13–14 (D.D.C. 2022) (JEB); *United States v. Dixon*, 486 F. Supp. 2d 40, 44–45 (D.D.C. 2007) (RBW).[2] Because Defendant is alleging that the Government is selectively prosecuting January 6th defendants based on their viewpoint, Mot. at 6, Defendant must still demonstrate that the decision to enforce/prosecute had a discriminatory effect, *see Frederick*, 82 F.4th at 1136.

To demonstrate a "discriminatory effect," a defendant must show that "similarly situated individuals" were not prosecuted. *Armstrong*, 517 U.S. at 465. "When a person's circumstances

---

[2] The Government states that the D.C. Circuit's analysis in *Frederick* "is inapplicable here" because Defendant "fails to show how selective enforcement violated any cognizable First Amendment right." Gov't's Opp'n at 9 n.2. However, because Defendant is alleging that the Government is selectively enforcing Section 231(a)(3) against January 6th defendants because of their viewpoint, Mot. at 6; *see also* Def.'s Reply at 5 n.8 ("[T]he stated purpose of the 'Stop the Steal' protest was to support the Republican presidential candidate."), the Court shall apply the D.C. Circuit's *Frederick* analysis to the present case.

present no distinguishable legitimate prosecutorial factors that might justify different prosecutorial decisions between him and the defendant, that person is similarly situated to the defendant." *United States v. Judd*, 579 F. Supp. 3d 1, 4 (D.D.C. 2021) (TNM) (internal quotation marks and citation omitted).  Legitimate prosecutorial factors include "relative culpability, the strength of the case against particular individuals, willingness to cooperate, and the potential impact of a prosecution on related investigations."  *United States v. Khanu*, 664 F. Supp. 2d 28, 32 (D.D.C. 2009) (CKK).  Notably, the phrase "similarly situated" is interpreted narrowly by courts.  *Stone*, 394 F. Supp. 3d at 31.

Here, Defendant argues that the Government is selectively prosecuting those who participated in the January 6th riot, but is failing to show the "same zeal" in prosecuting "protestors and rioters for Black Lives Matter or pro-Palestinian causes who engaged in similar or worse conduct than January 6 defendants."  Mot. at 1.[3]

As an initial matter, the Court notes that, contrary to Defendant's claim, the Government is not alleging that Defendant was "merely placed near the scene" where other rioters "committed violent acts."  Mot. at 6 n.5.  The Government is alleging that Defendant was an active participant of the Capitol riot.  *See, e.g.*, Gov't's Opp'n at 2 (Defendant "can initially be seen approximately 12 rows back" in the Tunnel on the Lower West Side, "holding and using a bullhorn to encourage the crowd"); *id.* (Defendant, "[o]ver time [] pushed his way closer to the entrance of the Tunnel"); *id.* (Defendant "shouted into a bullhorn as the crowd pushed its way into the Tunnel and assaulted

---

[3] ███████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████ But this exhibit and Defendant's corresponding arguments would be considered under the second element of a selective prosecution challenge (discriminatory intent), not the first element (discriminatory effect).  *See Judd*, 579 F. Supp. 3d at 4 (a defendant must show that the "Government prosecuted [him] because of his membership in an identifiable group").

police officers"); *id.* (Defendant "assisted fellow rioters by grabbing a riot shield and holding it up while the other rioters stepped onto the shield"); *id.* (Defendant "was among the few rioters who, after pushing to the front of the mob, succeed[ed] in breaking through the police line in the Tunnel").  To support its claims, the Government appends multiple images purportedly extracted from Defendant's social media account, including a post where Defendant allegedly claims he is "the First person to breech the White House in 200 years[.]"  *Id.* at 6.  With these allegations in mind, the Court turns to Defendant's arguments.

With respect to the Black Lives Matter movement and protests (and related George Floyd protests), Defendant maintains that there are "literally thousands of similarly situated comparators who were not arrested or charged at all and were not investigated or surveilled."  *Id.* at 6.  Defendant highlights in particular the events that occurred in Portland, Oregon.  *Id.* at 4–5.  Defendant's argument lacks support in this jurisdiction.  A number of district courts have already addressed similar selective prosecution claims.  *See, e.g.*, *Judd*, 579 F. Supp. 3d at 7–8; *id.* at 8 ("Given the important distinctions in the threats posed by the two riots, the Portland defendants are not similarly situated to Judd."); *United States v. Brock*, 628 F. Supp. 3d 85, 102–03 (D.D.C. 2022) (JDB) (rejecting defendant's argument that the "Portland protestors" are similarly situated to "January 6th defendants such as himself"); *United States v. Padilla*, No. 21-214, 2023 WL 1964214, at *5 (D.D.C. Feb. 13, 2023) (JDB) (rejecting selective prosecution claim based on comparisons to the Portland protests); *United States v. Rhodes*, No. 22-15, 2022 WL 3042200, at *5 (D.D.C. Aug. 2, 2022) (APM).[4]  Critical distinctions exist between the Capitol riot on January

---

[4] Defendant notes that these cases were decided prior to the D.C. Circuit's *Frederick* opinion.  Def.'s Reply at 4–5.  However, the district courts in those cases determined that the defendant(s) did not satisfy the first element of a selective prosecution challenge.  *See Judd*, 579 F. Supp. 3d at 8 ("Judd has therefore failed to make a credible showing of different treatment of similarly situated persons."); *Brock*, 628 F. Supp. 3d at 102–03 (rejecting defendant's arguments that the Portland protestors are similarly situated to January 6th defendants); *Padilla*, 2023 WL 1964214, at *5–6 (same); *Rhodes*, 2022 WL 3042200, at *5 (same).

6th and the riots in Portland in 2020.  For instance, January 6th defendants stormed the Capitol and "endangered hundreds of federal officials in the Capitol complex, including Members of Congress and their staffs, Vice President Pence, and the United States Capitol Police."  *Brock*, 628 F. Supp. 3d at 102 (citation omitted).  In contrast, the Portland protests/riots "happened at night, when no federal employees were in the buildings to be endangered."  *Id.*; *Judd*, 579 F. Supp. 3d at 7 ("[T]he Portland defendants primarily attacked at night, meaning they raged against a largely vacant courthouse.").  This distinction is key.  *See Brock*, 628 F. Supp. 3d at 102 ("The decision to file and pursue more serious charges based on the threat to government officials and employees is certainly a legitimate prosecutorial consideration.").  Additionally, the alleged purpose of the January 6th defendants' actions—obstructing the certification of the Electoral College vote—is also a factor that justifies the "differences in prosecutorial behavior."  *Id.* (citing *Rhodes*, 2022 WL 3042200, at *5).  Ultimately, courts in this jurisdiction have determined that the circumstances between the protests and riots in Portland and the Capitol riot on January 6th differ in kind and degree.  Moreover, Defendant's comparisons to specific individuals who participated in Black Lives Matter protests or the Portland riots fail for similar reasons—Defendant does not identify a similarly situated defendant given the "difference in violence, threat to citizen safety, and scope."  *Brock*, 628 F. Supp. 3d at 103.  And the two murders Defendant identifies, Mot. at 6, did result in prosecution and significant sentences, *see 26-year-old man sentenced to life for the killing of retired St. Louis police captain during George Floyd protests*, CBS News (Oct. 5, 2022), https://www.cbsnews.com/news/stephan-canon-life-sentence-david-dorn-murder-st-louis/;

*Alleged "boogaloo" extremist sentenced to 41 years in murder federal officer*, NBC News (June

---

Because the D.C. Circuit affirmatively stated that a party "[must] demonstrate he is similarly situated to others against whom the law was not enforced" to proceed with a selective enforcement claim, *Frederick*, 82 F.4th at 1145, the Court sees no basis to discount the earlier district court opinions with respect to the discriminatory effect element.

3, 2022), https://www.nbcnews.com/news/us-news/alleged-boogaloo-extremist-sentenced-41-years-murder-federal-officer-rcna31942.

Defendant also claims that January 6th defendants, including himself, are similarly situated to pro-Palestinian protestors. Def.'s Reply at 3. Due to the nascent nature of the pro-Palestinian protests, the Court cannot conclude at this time that the pro-Palestinian protestors are similarly situated to Defendant yet afforded different treatment. *Armstrong*, 517 U.S. at 470. However, the Court briefly notes that the Capitol riot was "the most significant assault on the Capitol since the War of 1812." *Trump v. Thompson*, 20 F.4th 10, 18–19 (D.C. Cir. 2021); *id.* at 19 ("The building was desecrated, blood was shed, and several individuals lost their lives. Approximately 140 law enforcement officers were injured, and one officer who had been attacked died the next day. . . . Portions of the building's historic architecture were damaged or destroyed."). As such, there may very well be "distinguishable legitimate prosecutorial factors that might justify different prosecutorial decisions between [a comparator] and the defendant." *Judd*, 579 F. Supp. 3d at 4 (internal quotation marks and citation omitted).

In sum, Defendant fails to make a "credible showing of different treatment of similarly situated persons." *Armstrong*, 517 U.S. at 470. His selective prosecution challenge therefore fails.

## IV.   CONCLUSION & ORDER

For the aforementioned reasons, Defendant's [97] Motion to Dismiss Count One for Selective Prosecution is **DENIED**.

**SO ORDERED**.

Dated: June 10, 2024

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge